1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

IBEW PACIFIC COAST PENSION
FUND,

11

                                    Plaintiff,

12

        v.

13

HARRIS ELECTRIC INC., et al.,

14

                                    Defendants.

CASE NO. C18-0181JLR

ORDER ON MOTION TO
DISMISS

15
16

## I.   INTRODUCTION

17        Before the court are Defendant Mackay Communications, Inc.'s ("Mackay") (1)

motion to dismiss Plaintiff IBEW Pacifica Coast Pension Fund's ("IBEW") claims (*see*

18

MTD (Dkt. # 15)); and (2) request for judicial notice of certain documents (RJN (Dkt.

19

# 16)).  IBEW opposes Mackay's motion to dismiss (*see* Resp. (Dkt. # 21)) but did not

20

file an opposition to Mackay's request for judicial notice (*see generally* Dkt.).  The court

21

has reviewed Mackay's motion and request for judicial notice, the parties' submissions

22

filed in support of and in opposition to Mackay's motion and request, other relevant

portions of the record, and the applicable law.  Being fully advised,[1] the court GRANTS

Mackay's request for judicial notice of certain documents as more fully described below.

The court also GRANTS in part and DENIES in part Mackay's motion to dismiss but

also GRANTS IBEW leave to amend its operative complaint.

## II.   BACKGROUND

IBEW is a joint labor-management trust fund created pursuant to Section 302(c) of

the Labor Management Relations Act ("LMRA"), 29 U.S.C § 186(c), and governed by

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et*

*seq.*, as amended.  (FAC (Dkt. # 9) ¶ 1.1.)  IBEW was established to provide pension

benefits to eligible members, retirees, and their beneficiaries.  (*Id.*)

On February 6, 2018, IBEW filed its initial complaint against Defendant Harris

Electric, Inc. ("Harris") to collect delinquent fringe benefit contributions that Harris

allegedly owed to IBEW.  (*See* Compl. (Dkt. # 1).)  IBEW served Harris with a summons

and the complaint on February 15, 2018 (*see* Aff. of Service (Dkt. # 3)), but Harris has

never appeared in this action (*see generally* Dkt.).[2]

On March 6, 2018, Harris filed a receivership action in King County Superior

Court for the State of Washington ("Harris Receivership") and made an assignment for

---

[1] IBEW and Mackay both request oral argument.  (*See* MTD at 1; Resp. at 1.)  Here, the court does not consider oral argument to be helpful to its decisional process.  *See* Local Rules W.D. Wash. LCR 7(b)(4).  Accordingly, the court DENIES the parties' requests for oral argument.

[2] Harris is an administratively dissolved Washington State corporation.  (FAC ¶ 1.2.)

1   the benefit of its creditors pursuant to RCW 7.08.030.  (*See* RJN ¶ 3, Ex. C at 1; *see also*

2   Notice (Dkt. # 5).)  On March 7, 2018, the state court appointed Mr. Mel Codd as the

3   general receiver ("Receiver") over the Harris Receivership.  (*See* RJC ¶ 3, Ex. C at 1-2;

4   *see also id.*, Ex. A at 1.)  On March 15, 2018, IBEW received the Notice to Creditors sent

5   by the Receiver's counsel.  (Notice at 1.)  The Notice to Creditors stated that the deadline

6   for filing a proof of claim was April 12, 2018.  (RJN ¶ 1, Ex. A at 1.)

7           On April 3, 2018, the Receiver filed a motion in the Harris Receivership for

8   approval of the sale of certain assigned Harris assets to Mackay.  (*See id.* ¶ 5, Ex. E at 4;

9   *id.* ¶ 3, Ex. C at 1.)  On April 16, 2018, the King County Superior Court entered an order

10  granting the Receiver's motion and approving the proposed sale.  (*Id.* ¶ 6, Ex. F; *see also*

11  *id.* ¶ 5, Ex. E at 4.)  The court found that Mackay "did not agree[] to assume, and would

12  not have entered into [the sale agreement] if it were required to assume, any of the

13  obligations of Harris to any of its creditors, except as detailed otherwise in the

14  [Receiver's] declaration."  (*Id.* ¶ 3, Ex. C at 2.)  The only obligations that Mackay

15  expressly assumed were Harris's Seattle, Washington, and Dutch Harbor, Alaska, real

16  property lease obligations.  (*Id.* ¶ 2, Ex. B ¶ 9.)  The court also found that the sale

17  agreement was "negotiated and entered into in good faith and without collusion of any

18  kind" (*id.* ¶ 3, Ex. C at 2), and that "[t]he Purchased Assets should be sold free and clear

19  of any liens, claims, encumbrances, or interests of any kind against Harris, the Receiver

20  or the Purchased Assets, without any representations or warranties, "as is and where

21  is" . . . . (*id.* at 3.)  In addition, the court found that the sale agreement did "not amount to

22  a consolidation, merger or de facto merger of [Mackay] and Harris and/or the

1    Receivership Estate," and that the sale "vest[ed] Mackay with all right, title and interest

2    of Harris and the Receiver in and to the Purchased Assets, free and clear of all Liens,

3    Claims, Encumbrances, and Interests." (*Id.* at 3-4.)  Finally, the court ordered that "[a]ny

4    and all Liens, Claims, Encumbrances and Interests shall attach only to the proceeds of the

5    Sale[] with the same priority, validity, force and effect, if any, as they now have in or

6    against the Purchased Assets," and that Mackay "shall have no liability for any Liens,

7    Claims, Encumbrances and Interests." (*Id.* at 4-5.)

8         Subsequent to the King County Superior Court's order, Mackay and the Receiver

9    closed the sale (*see id.* ¶ 5, Ex. E; *id.* ¶ 3, Ex. C at 3), and the Receiver sold the remaining

10   assigned assets to "various other businesses." (*id.* ¶ 5, Ex. E at 4.)

11        On April 25, 2018, IBEW submitted its initial proof of claim in the Harris

12   Receivership in the amount of $491,509.61.  (Status Report (Dkt. # 6) ¶ 5.)

13        On April 27, 2018, IBEW filed a notice of receivership and automatic stay in this

14   court with respect to its claims against Harris.  (Notice of Receivership (Dkt. # 5).)

15        On May 11, 2018, IBEW's counsel filed a notice of appearance in the Harris

16   Receivership.  (RJN ¶ 4, Ex. D.)  On June 13, 2018, IBEW submitted an amended proof

17   of claim in the Harris Receivership.  (FAC ¶ 3.8.)

18        On October 15, 2018, the Receiver filed a motion in the Harris Receivership to

19   approve his payments of claims and his final receivership report, for the discharge of the

20   receivership and related relief, and to approve the payment of professionals who had

21   assisted with the receivership.  (RJN ¶ 5, Ex. E at 14.)  The Receiver served the motion

22   on IBEW's counsel.  (*Id.* at 15.)  In the motion, the Receiver proposed paying $10,950.00

1    to IBEW for the portion of IBEW's employee benefit plan claim that was entitled to

2    statutory priority.  (*See id.* at 11; *see also* Status Report ¶ 10 ("On November 26, 2018,

3    Plaintiff received partial payment of its claim from the receivership estate ($10,950.00),

4    due in part to a statutory reduction pursuant to RCW 7.60.230(d) [sic]."); *see also* RCW

5    7.60.230(1)(d).[3]  On November 15, 2018, the King County Superior Court granted the

6    Receiver's motion, approved his distributions to creditors, approved his final accounting,

7    discharged him, and terminated the case effective on November 25, 2018.  (RJN ¶ 6, Ex.

8    F.)

9         On September 29, 2019, IBEW filed a status report in this case notifying the court

10   that the Harris Receivership was complete and asking the court to lift the automatic stay.

11   (*See* Status Report.)  On October 29, 2019, the court lifted the stay.  (10/19/19 Order

12   (Dkt. # 8).)

13        On January 2, 2020, IBEW filed an amended complaint in this action adding

14   Mackay as a defendant.  (*See* FAC.)  In its amended complaint, IBEW alleges that Harris

15   entered into a Collective Bargaining Agreement ("CBA") with the International

16   Brotherhood of Electrical Workers Local Union 46 ("the Union"), which governs fringe

17   benefit contributions Harris was obligated to make on behalf of its employees.  (*Id.*

18

19   [3] In relevant part, RCW 7.60.230(1)(d) states:

20   Allowed claims in a general receivership shall receive distribution under this
     chapter in the order of priority under (a) through (h) of this subsection and . . . on a
21   pro rata basis. . . . (d) Claims for . . . contributions to an employee benefit plan,
     earned by the claimant within one hundred and eighty days of the date of
22   appointment of the receiver or the cessation of the estate's business, whichever
     occurs first, but only to the extent of ten thousand nine hundred fifty dollars.

1  ¶¶ 2.2-2.3.)  IBEW further alleges that, under the CBA, Harris was required to make

2  fringe benefit contributions for its employees every month into the IBEW trust fund.  (*Id.*

3  ¶ 2.5.)

4          IBEW alleges that since January 2017, Harris has failed to submit timely

5  contributions to the trust fund in violation of ERISA.  (*Id.* ¶ 2.6.)  IBEW avers that Harris

6  withdrew from the IBEW trust fund and ceased its contributions in violation of the

7  Multiemployer Pension Plan Amendments Act ("MPPAA")[4] after Harris entered

8  receivership and liquidated its assets.  (*Id.* ¶ 3.4.)  As a result, IBEW asserts claims under

9  ERISA and MPPAA against Harris for both the delinquent contributions and for

10 withdrawal liability.  (*See id.* ¶¶ 2.1-3.11.)

11         IBEW also alleges that Mackay is jointly and severally liable for Harris's

12 delinquent contributions and withdrawal liability as a successor to Harris's business.  (*Id.*

13 ¶ 4.3.)  Specifically, IBEW alleges that Mackay subleased Harris's previous facilities and

14 that Mackay continues to operate essentially the same business that Harris previously

15 operated at those facilities.  (*Id.* ¶ 4.3.)  IBEW alleges that Mackay purchased a

16 substantial number of Harris's assets and contracts, including Harris's tradenames, URL,

17 phone number, customer data, vehicles, inventory, and real property.  (*Id.*)  IBEW further

18

19         [4] "The MPPAA amendments to ERISA provide, in part, that '[i]f an employer withdraws
   from a multiemployer [pension] plan in a complete withdrawal . . . , then the employer is liable
20 to the plan' for 'withdrawal liability.'" Resilient Floor Covering Pension Tr. Fund Bd. of
   Trustees v. Michael's Floor Covering, Inc., 801 F.3d 1079, 1086 (9th Cir. 2015) (alterations in
21 original) (quoting 29 U.S.C. § 1381(a)).  "Withdrawal liability 'is the amount determined [under
   the statutory calculation method] . . . to be the allocable amount of unfunded vested benefits'
   accrued at the time of the employer's withdrawal."  *Id.* (alterations in original) (quoting 29
22 U.S.C. § 1381(b)).

1    asserts that Mackay hired a substantial number (16) of Harris's former employees and

2    continues to employ them.  (*Id.*)  IBEW alleges that Mackay "took control of the market

3    share previously held by [Harris] by continuing with [Harris's] previous clients and

4    customers and by maintaining facilities in the area previously held by [Harris.]"  (*Id.*)

5    Indeed, IBEW avers that "Mackay presently conducts—as well as at previous times—

6    essentially the same business as [Harris] and Mackay . . . had notice of the unpaid

7    contributions and withdrawal liability of [Harris]," and is therefore "a bona fide successor

8    employer and is jointly and severally liable for the unpaid contributions and withdrawal

9    liability of [Harris]."  (*Id.* ¶ 4.4.)

10         On February 4, 2020, Mackay filed its present motion to dismiss and its request

11   for judicial notice.  (*See generally* MTD; RJN.)  Mackay asserts in its motion that IBEW

12   is barred from asserting successor liability claims against Mackay because Mackay

13   purchased free and clear Harris's assigned assets in the Harris Receivership.  (*See* MTD

14   at 1.)  Mackay also argues that IBEW inadequately alleges that Mackay had notice of

15   Harris's liability to IBEW for delinquent contributions to IBEW's trust fund and for

16   withdrawal liability.  (*See* Reply (Dkt. # 22) at 6-7.)  The court now considers Mackay's

17   motion and request.

18                           **III.    ANALYSIS**

19   **A.    Rule 12(b)(6) Standard**

20         Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to

21   state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When

22   considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in

the light most favorable to the nonmoving party. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the claimant. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78.  Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**B.     Mackay's Request for Judicial Notice and Material the Court Considers**

When considering its motion to dismiss, Mackay asks the court to take judicial notice of a variety documents related to and filed in the Harris Receivership, including: (1) the Receiver's March 14, 2018, notice to creditors; (2) the Receiver's April 3, 2018, declaration; (3) the state court's April 16, 2018, order granting the Receiver's motion for

1    approval of the sale of assets to Mackay; (4) IBEW's notice of appearance in the state

2    court receivership; (5) the Receiver's motion to approve his payment of claims and his

3    final receivership report, for the discharge of the receivership and related relief, and to

4    approve the payment of professionals who had assisted with the receivership; and (6) the

5    state court's November 15, 2018, order approving the Receiver's distributions to

6    creditors, approving his final accounting, discharging him, and terminating the case. (*See*

7    RJN ¶¶ 1-6, Exs. A-F.)  IBEW does not object to Mackay's request.  (*See generally*

8    Resp.)

9            Generally, a district court may not consider any material beyond the pleadings in

10   ruling on a Rule 12(b)(6) motion to dismiss.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th

11   Cir. 2001) (citations omitted).  One exception to this rule is that the court may take

12   judicial notice of documents pursuant to Federal Rule of Evidence 201.  *Khoja v.*

13   *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also* Fed R. Evid.

14   201.  Thus, the "court may take judicial notice of matters of public record without

15   converting a motion to dismiss into a motion for summary judgment."  *See Khoja*, 899

16   F.3d at 999 (quoting *Lee*, 250 F.3d at 689 (quotation marks and citation omitted)).

17   However, the court may not take judicial notice of disputed facts contained in such public

18   records.  *See id.*

19           The documents Mackay submits for judicial notice are public records.  (*See*

20   *generally* RJN.)  IBEW neither contests their authenticity; nor otherwise objects to

21

22

1   Mackay's request.[5]  (*See generally* Resp.)  The court, therefore, grants Mackay's request

2   and takes judicial notice of the state court filings that Mackay submits.  (*See* RJN.)

3   Although the court considers these documents in its review of Mackay's motion to

4   dismiss, consistent with the authorities cited above, the court does not take judicial notice

5   of any disputed facts contained in the parties' state court filings.

6   **C.    Mackay's Motion to Dismiss**

7            In its motion to dismiss IBEW's complaint, Mackay relies on the state court order

8   that authorized the sale of Harris's assigned assets in the Harris Receivership, which

9   stated that Mackay's purchase of those assets was "free and clear of all Liens, Claims,

10   Encumbrances and Interests."  (*See* MTD at 1; RJN ¶ 3, Ex. C at 4.)  Mackay argues that

11   the order bars IBEW from asserting successor liability claims against Mackay.  (*See*

12   MTD at 1.)

13            There is no dispute that the Ninth Circuit recognizes a common law doctrine of

14   successor liability that "provides an exception to the general rule that a purchaser of

15   assets does not acquire a seller's liabilities."  *Resilient Floor Covering Pension Tr. Fund*

16   *Bd. of Trs. v. Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1090 (9th Cir. 2015) (citing

17   *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v.*

18   *Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995)).  The federal common law successorship

19   doctrine applies to cases that arise under federal labor and employment statutes.  *See id.*

20

21            [5] The court may consider IBEW's lack of response as an admission that Mackay's request
     for judicial notice is meritorious.  *See* Local Rules W.D. Wash. LCR 7(b)(4) (". . . [I]f a party

22   fails to file papers in opposition to a motion, such failure may be considered by the court as an
     admission that the motion has merit.").

1     The doctrine, "when applicable, holds legally responsible for obligations arising under

2     federal labor and employment statutes businesses that are substantial continuations of

3     entities with such obligations." *Id.* (citing *Upholsterers' Int'l Union Pension Fund v.*

4     *Artistic Furniture of Pontiac*, 920 F.2d 1323, 1326 (7th Cir. 1990)).  The Ninth Circuit

5     has applied the doctrine to actions for payments of delinquent ERISA contributions.  *See*

6     *Trs. for Alaska Laborers-Construction Indus. Health & Sec. Fund v. Ferrell*, 812 F.2d

7     512, 516 (9th Cir. 1987); *Hawai'i Carpenters Tr. Funds v. Waiola Carpenter Shop, Inc*.,

8     823 F.2d 289, 297 (9th Cir. 1987).

9          The federal common law successor liability doctrine "allows lawsuits against even

10    a genuinely distinct purchaser of a business if (1) the successor had notice of the claim

11    before acquisition, and (2) there was a substantial continuity in operations of the business

12    before and after the sale." *Carpenters Health & Sec. Tr. of W. Wash. v. Paramount*

13    *Scaffold, Inc.*, 159 F. Supp. 3d 1239, 1234 (W.D. Wash. Feb. 1, 2016) (citing *Michael's*

14    *Floor Covering, Inc*., 801 F.3d at 1090-91).  Successor liability is an equitable doctrine,

15    not an inflexible command, and "in light of the difficulty of the successorship question,

16    the myriad factual circumstances and legal contexts in which it can arise, and the absence

17    of congressional guidance as to its resolution, emphasis on the facts of each case as it

18    arises is especially appropriate." *Howard Johnson Co., Inc. v. Detroit Local Joint Exec.*

19    *Bd*., 417 U.S. 249, 256 (1974); *see also Steinbach v. Hubbard*, 51 F.3d 843, 846 (9th Cir.

20    1995).

21         Mackay's objection to the imposition of such liability rests on the sale of Harris's

22    assigned assets to Mackay under RCW 7.60.260 in the Harris Receivership, which

1   Mackay argues bars IBEW's successor liability claim here.  (*See* MTD at 7-11; Reply at

2   2-6.)  The Ninth Circuit has not answered this question, and Mackay cites no authority

3   specifically addressing the effect of a state court receivership sale in this context of a

4   claim for successor liability for delinquent ERISA contributions or MPPAA withdrawal

5   liability.  Instead, Mackay relies on two out-of-circuit decisions involving the sale of

6   assets in a federal bankruptcy proceeding under 11 U.S.C. § 363(f):  *In re Trans World*

7   *Airlines, Inc*., 322 F.3d 283 (3d Cir. 2003), and *In re Leckie Smokeless Coal Co.*, 99 F.3d

8   573 (4th Cir. 1996).  Section 363(f) allows a debtor to "sell property under . . . this

9   section free and clear of any interest in such property of an entity other than the estate."

10  11 U.S.C. § 363(f).  In *Trans World*, the Third Circuit affirmed a sale under § 363(f)

11  "free and clear" of successor liability claims for employment and sex discrimination

12  claims.  322 F.3d at 292.  In *Leckie*, the Fourth Circuit concluded that successor liability

13  claims for future medical benefits under the Coal Industry and Retiree Health Benefit Act

14  could be extinguished by a sale of assets under § 363(f).  99 F.3d at 585.  Mackay argues

15  that a sale of assets under 11 U.S.C § 363(f)—like those that occurred in *Trans World*

16  and *Leckie*—is analogous to the sale of assets that occurred here in the Harris

17  Receivership proceeding under RCW 7.60.260.  (*See* Reply (Dkt. # 22) at 5 ("[T]he Sale

18  Order was entered pursuant to RCW 7.60.260, which provides for sales free and clear just

19  as section 363(f) of the Bankruptcy Code does.").)  Consequently, Mackay argues that the

20  sale of Harris's assigned assets in the Harris Receivership "cut off" IBEW's claim for

21  successor liability.  (*See id.* at 4.)

22

ORDER - 12

1    There are, however, important differences in the statutory language of the federal

2  and state sales provisions that Mackay ignores.  Section 363(f) provides for the sale of

3  property "free and clear of any interest in such property of an entity other than the

4  estate."  11 U.S.C. § 363(f).  Both the *Trans World* and *Leckie* courts interpreted the term

5  "interest" in § 363(f) broadly when concluding that the plaintiff's claims for successor

6  liability were barred in those cases.  *See Trans World*, 322 F.3d at 288-89; Leckie, 99

7  F.3d at 581-82.  Indeed, in *Trans World*, the court noted:

8       Some courts have narrowly interpreted interests in property [as used in
        § 363(f)] to mean *in rem* interests in property, such as liens. . . . However,
9       the trend seems to be toward a more expansive reading of "interests in
        property" which "encompasses other obligations that may flow from
10      ownership in property."

11  322 F.3d at 288-89 (internal citations omitted).  Similarly, the *Leckie* court explained:

12      [W]hile the plain meaning of the phrase "interest in such property" suggests
        that not all general rights to payment are encompassed by the statute,
13      Congress did not expressly indicate that, by employing such language, it
        intended to limit the scope of section 363(f) to *in rem* interests, strictly
14      defined, and we decline to adopt such a restricted reading of the statute here.

15  99 F.3d at 582 (internal citations omitted).  Thus, both the *Trans World* and *Leckie* courts

16  based their decisions concerning the plaintiff's successor liability claims on an

17  interpretation of the term "interest" that included claims beyond mere *in rem* interests,

18  such as liens.

19      However, unlike the statutory language of § 363(f), which refers to sales "free and

20  clear of any interest" in the subject property, RCW 7.60.260 addresses sales "free and

21  clear of liens and of all rights of redemption."  *Compare* 11 U.S.C. § 363(f) *with* RCW

22  7.60.260(2).  Although no Washington court has interpreted this phrase, the phrase the

ORDER - 13

1   Washington Legislature used in RCW 7.60.260, referring to "liens and . . . all rights of

2   redemption," is—on its face—narrower than the phrase Congress used in § 363(f),

3   referring to "any interest" in property.  IBEW's successor liability claim is neither a lien

4   nor a right of redemption in the assigned Harris property purchased by Mackay.  Indeed,

5   IBEW argues, and Mackay does not dispute, that its claims arise under ERISA "which

6   does not afford [IBEW] the right to lien, claim, encumber, or take an interest in the

7   personal property of a delinquent employer."  (Resp. at 11.)  Thus, the court concludes

8   that the cases Mackay relies upon involving § 363(f) sales are not analogous to sales

9   under RCW 7.60.260 or applicable to the issues this court must resolve.[6]

10          Instead, the court finds persuasive a Seventh Circuit decision relied on by

11  IBEW—*Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent)*

12  *Pension Fund v. Tasemkin*, 59 F.3d 48 (7th Cir. 1995).[7]  (*See* Resp. at 7, 16-17; *see also*

13  Reply at 3 (referring to *Tasemkin* "as a case on which [IBEW] heavily relies")).  In

14  *Tasemkin*, the Seventh Circuit first recognized the successor relationship between the two

15  businesses involved, including notice of the plaintiff's claim and continuity of the

16  business when the entity at issue changed ownership and morphed from what the

17

18          [6] The court recognizes that in contrast to the analysis in *Trans World* and *Leckie*, Chief
19  Judge Ricardo S. Martinez concluded in *Carpenters Health and Security Trust of Western
    Washington v. Paramount Scaffold, Inc.*, 159 F. Supp. 3d 1229, 1233-38 (W.D. Wash. 2016),
    that successor liability could attach to a bona fide successor despite the successor's purchase of
20  the assets in an 11 U.S.C. § 363(f) sale.  Because a § 363(f) sale is not at issue in this case, the
    court need not resolve this apparent split in authority here.

21          [7] The court notes that the Ninth Circuit relied upon *Tasemkin* in rendering its decision in
    on successor liability in *Michael's Floor Covering, Inc.  See Michael's Floor Covering, Inc.*, 801
22  F.3d at 1090, 1095 n.4.

1    *Tasemkin* court referred to as the "Old Tasemkin" into the "New Tasemkin."  59 F.3d at

2    49-50.  The Seventh Circuit then rejected the district court's basis for refusing application

3    of the successorship doctrine due to the intervening bankruptcy of the "Old Tasemkin,"

4    reasoning as follows:

5              [O]nce a bankruptcy proceeding is completed and its books closed, the
              bankruptcy has ceased to exist and the priorities by which its creditors have
6              been ordered lose their force.  In the instant case, whatever happens to New
              Tasemkin in the Fund's pursuit of this claim will have no effect on the
7              bankruptcy proceeding—that is over and done with and the debtor, Old
              Tasemkin, has ceased to be.  The Fund's suit, a full two years after the
8              bankruptcy case has closed, cannot possibly affect the amount of property
              available for distribution to Old Tasemkin's creditors; all of Old Tasemkin's
9              property has already been distributed.

10             What the imposition of successor liability would accomplish, and what the
              district court objected to, would be a second opportunity for a creditor to
11             recover on liabilities after coming away from the bankruptcy proceeding
              empty-handed.  But a second chance is precisely the point of successor
12             liability, and it is not clear why an intervening bankruptcy proceeding, in
              particular, should have a per se preclusive effect on the creditor's chances.
13
              In so holding we do not suggest that a creditor's prior opportunity to satisfy
14             the claim against the predecessor is irrelevant.  In fact, this Circuit and others
              have held that a creditor's ability to recover against the predecessor is a factor
15             of significant weight in deciding whether to allow successor liability. . . .
              Instead of being dispositive, however, the availability of relief from the
16             predecessor is a factor to be considered along with other facts in a particular
              case.  Here, those facts include the apparent nature of the acquisition of Old
17             Tasemkin by New Tasemkin—which clearly had the effect, intended or no,
              of frustrating unsecured creditors while resurrecting virtually the identical
18             enterprise.

19    *Tasemkin*, 59 F.3d at 51 (internal citations, some quotation marks, and some original

20    alterations omitted).

21             The court finds the *Tasemkin* court's reasoning applicable here.  If IBEW properly

22    alleges Mackay's liability under the successorship doctrine, then although IBEW's notice

ORDER - 15

1    of and participation in the state receivership proceeding "is a factor to be considered

2    along with other factors in a particular case," *id.*, it is not—standing alone—dispositive.

3    Thus, the court rejects Mackay's argument that the Harris Receivership or the sale

4    pursuant to RCW 7.60.260 that occurred therein "cut[s] off" any possibility of successor

5    liability for IBEW's claims and denies IBEW's motion to dismiss on that basis.[8]

6         In addition to arguing that the Harris Receivership and sale extinguished IBEW's

7    claim for successor liability, Mackay also argues that IBEW's amended complaint is

8    deficient because it fails to allege that Mackay had notice of IBEW's claim before its

9    acquisition of the assigned Harris assets.  (*See* Reply at 6-7.)  As noted above, the Ninth

10   Circuit has determined that a bona fide successor can be held liable for its predecessor's

11   MPPAA liability "so long as the successor had notice of the liability."  *Michael's Floor*

12   *Covering*, 801 F.3d at 1095.  In its response to Mackay's motion, IBEW argues that

13   "Mackay had notice of the delinquent fringe benefit contributions and withdrawal

14   liability, due to its astute business knowledge, continued involvement in the Harris

15   [r]ecievership case, and through the hiring of numerous former Harris employees."

16   (Resp. at 21.)  In support of this argument, IBEW cites both paragraph 4.4 of its amended

17   complaint and a document of which the court has taken judicial notice.  (*See id.* (citing

18   FAC ¶ 4.4 & RJN ¶ 5, Ex. E at 5:15-17).)  Although paragraph 4.4 of the amended

19

20   _____

21   [8] The court acknowledges, however, that this issue may be appropriate to raise on a
     motion for summary judgment by either party in the context of all the other factors the court
     considers when determining successor liability.  *See, e.g.*, *N.L.R.B. v. Jeffries Lithograph Co.*,

22   752 F.2d 459, 463 (9th Cir. 1985) (providing a non-exhaustive list of factors that the court
     considers when determining the successorship of a company).

1  complaint states that "at all relevant times" Mackay "had notice of the unpaid

2  contributions and withdrawal liability of [Harris]," the court finds this allegation too

3  conclusory to pass Rule 12(b)(6) muster. *See Sprewell*, 266 F.3d at 988.  IBEW also cites

4  to a statement in a motion in the state court receivership proceeding, in which the

5  Receiver states that he "coordinated interviews for the former [Harris] employees with

6  Mackay."  (RJN ¶ 5, Ex. E at 5:15-17.)  Even if the court were to credit this statement, it

7  does not adequately allege notice of IBEW's claim to Mackay.  But in any event, as noted

8  above, although the court takes judicial notice of the parties' state court filings, the court

9  does not take judicial notice of any disputed facts contained in those filings. *See supra*

10  § III.B.  Thus, the court concludes that IBEW has not adequately alleged that Mackay had

11  notice of IBEW's claim before its acquisition of the assigned Harris assets.  Because

12  notice is a required element for IBEW's claim based on successor liability, *see Michael's*

13  *Floor Covering*, 801 F.3d at 1095; *see also Paramount Scaffold, Inc*., 159 F. Supp. 3d at

14  1234, and IBEW's amended complaint fails to sufficiently plead facts supporting this

15  element of its claim, the court grants Mackay's motion and dismisses IBEW's amended

16  complaint.

17  **D.    Leave to Amend**

18       Under Federal Rule of Civil Procedure 15(a), courts "should freely give leave [o

19  amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "In exercising this

20  discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate a

21  decision on the merits, rather than on the pleadings or technicalities." *Roth v. Garcia*

22  *Marquez*, 942 F.2d 617, 628 (9th Cir. 1991); United States v. Webb, 655 F.2d 977, 979

1    (9th Cir. 1981).  Further, the policy of favoring amendments to pleadings should be

2    applied with "extreme liberality."  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186

3    (9th Cir. 1987).  There is no basis for denying IBEW leave to amend its operative

4    complaint here.  Due to the long stay in this matter, the case is in its infancy.

5    Accordingly, the court grants IBEW leave to amend its operative complaint (*see* FAC) to

6    correct the deficiencies cited herein.  IBEW shall file its amended complaint within 20

7    days of the filing date of this order.

8    **E.     Mackay's Request for Fees and Costs**

9           Mackay seeks an award of attorney's fees and costs under 29 U.S.C. § 1132(g)(1)

10   and 29 U.S.C. § 1451(c).  (*See* MTD at 11.)  The parties dispute how the court should

11   interpret these fee provisions and to whom fees may be awarded under these provisions.

12   (*See* Resp. at 22-23; Reply at 11.)  There is no need for the court to resolve these issues

13   now.  The court has denied much of Mackay's motion and granted leave to amend with

14   respect to the portion of Mackay's motion that it granted.  There is no prevailing party in

15   this action and no basis for an award of fees and costs to any party at this juncture.

16   Accordingly, the court denies Mackay's request.

17                                  **IV.  CONCLUSION**

18          Based on the foregoing analysis, the court GRANTS in part and DENIES in part

19   Mackay's motion to dismiss IBEW's complaint (Dkt. # 15).  The court further GRANTS

20   IBEW leave to amend its operative complaint as described herein within 20 days of the

21   filing date of this order.  In addition, the court DENIES Mackay's request for an award of

22   fees and costs.  Finally, pursuant to its February 11, 2010, order, which stayed the parties'

1   initial scheduling deadlines until the court's resolution of this motion, the court will issue

2   an amended order regarding deadlines for the parties' initial disclosures and the filing of

3   joint status reports.  (*See* 2/11/20 Order (Dkt. # 19) at 1.)

4        Dated this 18th day of May, 2020.

5

6

7   JAMES L. ROBART
    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 19